## THE ANDOVER AND MEDFORD TURNPIKE CORPO- RATION, Petitioners &c. *versus* THE COUNTY COMMISSIONERS OF MIDDLESEX.

Where a turnpike road is, by the assent of its proprietors, laid out by the county commissioners as a free public highway, (pursuant to *St.* 1833, *c.* 147 ; Revised Stat. *c.* 39, § 16 *et seq.*,) the commissioners' allowance of damages to such proprietors is conclusive upon them and not subject to revision by a jury.

*March 14th, 1837, at Boston.*

*March 20th, 1837.*

THIS case was argued by *Greenleaf* and *A. Bartlett,* for the petitioners, and by *Choate,* for the respondents. The material facts are stated in the opinion of the Court, delivered by SHAW C. J. A question of considerable importance to the community, arises upon this petition. It is a petition to this Court for a writ of *mandamus* to the county commissioners, requiring them to issue their warrant to summon a jury to assess the damages to the petitioners, upon taking their turnpike road as a common highway. The state of the question is plain and simple. Application was made to the county commissioners, pursuant to Stat. 1833, *c.* 147, to lay out that portion of the

Andover and
Medford
Turnp. Corp.
v.
County
Commis-
sioners of
Middlesex.

Andover and Medford turnpike road, which passed through the towns of Reading, Stoneham and Medford, as a common highway. The proprietors of the turnpike road and the three towns concerned, by their respective corporate acts, expressed their assent to the measure, and the county commissioners had, by the terms of the statute, jurisdiction of the subject, and authority to lay out that turnpike road for a highway, as prayed for. The commissioners allowed to the proprietors of the turnpike road the sum of $ 3000 as damages. The proprietors feeling themselves aggrieved by the insufficiency of this allowance, seasonably applied to the commissioners by petition, to award a jury to assess their damages, which the commissioners declined doing, on the ground that their allowance was conclusive.

The question is, whether under the statute, the proprietors are entitled to have this allowance of damages revised by a jury, as in the ordinary case of a person whose land is taken for a common highway.

This authority to the commissioners to change a turnpike road into a common, open and free highway, is comparatively a recent enactment, growing apparently out of a peculiar and novel state of things. It was first given by St. 1827, c. 77, § 14, providing for the appointment and regulating the proceedings of county commissioners. It was not the sole and principal subject of the act. It probably originated in the well known fact, that many turnpike franchises had become of no value, and in some instances the cost of supporting the road exceeded the income, so that the franchise was a burden instead of a benefit. The statute provided, that whenever a turnpike corporation should make application setting forth their desire to relinquish and abandon their franchise, as to the whole or any part of the road, which they were bound to support, the county commissioners should have jurisdiction, and might lay out, alter or vary the same as they should judge expedient. It then provided, that in the assessment of damages they should allow to any person or corporation injured thereby, such damages as they would be justly entitled to receive, over and above the injury sustained by the continuance of the same as a turnpike road and no more, deducting the advantage, and there-

Andover and
Medford
Turnp. Corp.
v.
County
Commis-
sioners of
Middlesex.

upon the corporation was exempted from further respons'bility for the road so taken.

It is very manifest, that in this act no damages were to be awarded to the proprietors of the turnpike road ; they are deemed a party benefited, not a party injured. Further, the damage is to those over whose land the road passes, for the excess of damages, &c. or those whose lands might be taken for alterations. The great object was, to give the commissioners jurisdiction to accept a surrender of the franchise for the public, and do such other acts as might be proper to make such surrender effectual and beneficial to the public. No provision was made in this act, for the assent of towns ; but when such roads were lawfully made highways, the liability of towns to support them would arise under the general law.

So the law stood, until the act was passed under which the question now arises, St. 1833, c. 147. By this act the county commissioners were authorized upon application to them made, (not by the turnpike proprietors necessarily,) to lay out the whole or any part of a turnpike road as a common highway, when in their judgment common convenience and necessity should require it. But this can only be done by the assent of the proprietors, and of the towns who are to become responsible for the support and repairs of the road. The arrangement is, therefore, in some measure, in the nature of an agreement between the parties most interested, made under the superintendence of the commissioners, who represent the county, and who are authorized to apportion the expense upon and amongst the county and the towns interested.

The second section then provides, that the commissioners have power to allow to the turnpike corporation, such damages as they shall think reasonable and just, to be paid out of the county treasury, and to order a part of said damages, not exceeding one half, to be charged upon and apportioned amongst the towns through which the road passes.

The Court are of opinion, that here was an authority given to the commissioners which was definitive, and that their allowance was intended to be conclusive.

In the original act no damage was to be allowed to the proprietors. The acceptance of their franchise, and the discharge

from their obligations, was deemed a boon. The franchise, though it might have cost them a large sum of money, was deemed worthless.

But the subsequent act seems to have contemplated a case, where the tolls may be barely sufficient to keep the road in repair, where however it would be of some little value to the proprietors, but where it would be the manifest interest of the proprietors to expend as little as possible in repairs, merely enough to make it passable. It might be for the public interest to pay the proprietors something, and put the road at once under the care of the towns, who would be induced by considerations of interest and public spirit, to keep it in the best repair, and find their recompense in the increased travel, which good and free roads are found to encourage.

There was no danger that this authority would be used oppressively, because it could only be exercised by the assent of the proprietors, and this power of giving or withholding their consent, is an ample security to them.

The language used in this section is not such as is commonly used, when parties injured are to be compensated. The commissioners are not to assess such damage as they have sustained ; this might be claimed to be the whole cost of the road. They are to allow the proprietors such damages as they should think reasonable and just. It reposes a confidence in them, having a regard to the reasonableness and justice of the case, of which they are made judges.

Further, the case is manifestly distinguishable from ordinary cases of laying out highways, over the lands of owners, without their consent, in this ; that it is rather a matter of convenience and expediency than of necessity. The words of the adjudication, " common convenience and necessity " are used, but this is rather in conformity to the language commonly used, than to its strict applicability. The highway cannot be said to be one of *necessity*, because the public already have the full benefit of it as a highway. It is rather a question of expediency and policy, whether it is best to continue to pay toll, and require the proprietors to keep it in repair, or to obtain the benefit of a free road, and let the public repair. Such a question depends mainly upon the terms on which the change

Andover and Medford Turnp.Corp. v County Commissioners of Middlesex.

can be made, and this again upon the question, whetner it yields any considerable income to the proprietors, and whether on its voluntary extinguishment it would be reasonable and just to make them any allowance and what. This question it was intended to submit to the judgment of the commissioners, acting for the public.

The argument mainly relied on for the petitioners, is derived from the terms of the fourth section, which provides that all proceedings in the laying out of any road, in pursuance of the act, shall be in conformity with the provisions of law for laying out common highways. It is contended, that as these acts give a right to have a jury to revise the assessment of damages, it was intended to be allowed in the present case. Had it appeared from the whole statute taken together, that it was intended that damages should be assessed to all persons, whose property might be affected by the establishment of these highways, including the proprietors of the turnpike road, without distinction, there would be much force in this argument, and as it is, we think that if in laying out a turnpike road into a common highway, any alterations should be made, and thereby the land of other persons should be taken, this last section would be broad enough to warrant the commissioners in assessing damages, and in granting a jury to revise them, in case the party should require it. It would come within the common case of the property of an individual, taken for public use, by the public, in virtue of its right of eminent domain, to which the assent of the owner is not necessary. But taking the provisions of the second section, and considering it manifest, that it was not the intention of the legislature to provide for a general assessment of damages for the proprietors, but only for a reasonable allowance, at the judgment of the commissioners, and the whole proceeding being with the consent of the proprietors, we think that no constitutional provision required the legislature to provide for the trial by jury ; and that the very general words in the fourth section were not intended to control the special powers in the second.

It was urged in argument, that trial by jury is favored, and when the right is doubtful, in the terms of the statute, such construction should be adopted as to favor it. This is undoubtedly

true, except in cases where by the actual or implied assent of the party another mode of trial is provided.

But it was further urged, that this circumstance of assent, does not so much vary the case, because in cases where individuals are petitioners for laying out a road over their own lands, they are as much entitled to a jury to assess their damages, as those whose lands are taken without their request and against their consent. This is undoubtedly true, but it is because the statute, in terms gives them this right. But if an act were passed, that when on the application for a highway, all the persons over whose lands it is proposed to make it, petition for it, the commissioners shall allow them such damages as they think reasonable upon a balance of advantages and disadvantages, without any provision for having that allowance revised by a jury, I know of no principle upon which such a law could be held to be an infringement on the right of trial by jury.

In some of the earlier statutes, after the adoption of the constitution, where, on the grant to build bridges, and otherwise, private property was authorized to be taken for public use, and where it was provided that damages should be determined by commissioners, without any provision for an assessment by jury, it was considered to be contrary to the provision of the constitution, and that the party whose property was taken without his consent was entitled to a trial by jury. *Chadwick* v. *Proprietors of Haverhill Bridge*, 2 Dane's Abr. 686. But this was founded solely on the consideration, that the property of the party was taken without his consent, and that he was not bound, without his consent, to conform to an assessment not made by a jury. But when an assessment by referees or commissioners is provided for, by consent, it is held to be as binding and conclusive as an assessment by jury. Indeed in most of the acts respecting public highways and turnpike roads, there is a provision that damages shall be definitively assessed by a committee, if the parties so agree.

We think this construction is confirmed by the provisions of the Revised Statutes, where these several statutes have been condensed and reënacted. It does not seem to have been the intention of the revising commissioners or of the legislature, to

Andover and Medford Turnp.Corp. *v.* County Commissioners of Middlesex.

Andover and
Medford
Turnp.Corp.
*v.*
County
Commis-
sioners of
Middlesex

alter the law, but to render the existing provisions somewhat more clear. By the language used, and the collocation of the several provisions, we think the construction which we have adopted, is the construction of the Revised Statutes. Revised Stat. *c.* 39, § 16, 17, 18, 19.

*Petition dismissed.*